## Shaw v. Livermore, *et al.*

Where S agreed to deed a lot to L upon condition, that he would make certain improvements and live upon the lot, it was held that if L performed the substantial conditions with ordinary diligence, he was entitled to a specific performance.

Equity will extend relief, even if there has not been a strict legal compliance with the terms of the contract, if it can be done consistently with the essence of the agreement.

Where one of the conditions upon which a deed should be made, was, that the purchaser should reside upon the lot, but the term of such residence was not designated, it was held that as the purchaser had complied with all the other conditions to secure title, and had resided upon the lot nearly two years before he left it, that such leaving would not be an abandonment, and that he was entitled to a deed.

The recission or specific performance of a contract is left to the sound discretion of the chancellor, to be exercised upon a consideration of the circumstances of each case, under applicable general rules of equity.

Evidence will not be considered which is not responsive to the bill or answer.

*In Equity.   Appeal from Jackson District Court.*

*Opinion by* GREENE, J.   The bill in this case, was filed by John Shaw against Allen Dutton and Zalman Livermore for a specific performance.   In substance it avers, that, in May, 1845, Shaw contracted to sell Dutton a certain one acre lot of land, in the town of Springfield, in Jackson county, upon the condition that Dutton should build a line fence between said lot and the adjoining land, belonging to said Shaw on the east and south sides of said lot, and pay the sum of one dollar and twenty five cents, and that so soon as Dutton should build said fence and pay said sum of money, Shaw was to make him a deed in fee simple to said lot.   The bill further alleges, that in pursuance of the agreement Dutton entered upon the premises, erected a dwelling house thereon, and made other improvements under the observation and notice of said Shaw, and without any objection from him; that in the spring of 1847, Dutton made the fence, tendered the money, and demanded a deed, which was refused; that Shaw intended to cheat and defraud Dutton; and that Dutton sold the premises to Livermore in April, 1847.   The bill concludes with a prayer for a deed in accordance with the contract, and for general relief.

The answer admits that there was a contract for the land designated; but denies that the terms of the contract were such as are set forth in the bill.   It states, that Dutton, who represented himself to be a good house carpenter and cabinet maker, agreed to settle upon the land, build a good house thereon, and also build a good board fence, five and a half feet high on the east and south sides of the premises and carry on his trade; and that upon the performance of those conditions, the respondent was to give and grant the lot of land in question.   But the answer absolutely denies that the complainant ever complied with those conditions, and charges that he did not carry on his trade upon the premises, and that he declared his inten-

tion to abandon, and did abandon the premises, and that he stated on divers occasions to the respondent that he did not expect him to give a deed for the land as he had not fulfilled the contract. Respondent then admits that complainant entered upon the lot, and charges that during the time he remained there, complainant repeatedly promised respondent that he would comply with the contract, and respondent was induced to believe that he would do so until he abandoned the premises; admits that some fence was made in the spring of 1847, but denies that it was such a fence as the contract required; admits that Shaw sold premises to Livermore and that a deed was demanded, and refused, because the contract had not been complied with, on the part of respondent; and the answer denies all fraud and the right of complainant to relief in equity.

The complainant filed a general replication.

Depositions were taken by which it is proved by one witness, that Shaw admitted the sale of the lot to Dutton, for the sum of one dollar and twenty five cents and upon condition that he would build a house on the lot; that in the summer of 1845, Dutton built the house upon the lot and moved into it; and that there was a board fence built on the east and south sides of the lot. Another witness testified that Shaw told him that he had done more than any other man in getting people to settle at Springfield, that he had given Dutton an acre lot, and on being told that he got pay for it, replied that he only received government price for the land. The same witness swore that Dutton built a house upon the lot, and lived in it until May, 1847; that Dutton on two occasions, tendered one dollar and twenty five cents to Shaw, and demanded a deed which was refused, and that the fence was finished around the lot before the final tender and demand. Other witnesses testified in substance to the same effect.

Depositions were also introduced in behalf of respondent in support of averments contained in his answer; but the testimony is not sufficient, we think, to controvert the

material allegations in the bill, as sustained by preponderating evidence.

The court referred the case to P. B. Bradley, Esq., as a master to assess the value of the improvements upon the premises, who accordingly returned the value, under the estimate of witnesses, at one hundred dollars and four cents.

Upon a full hearing, the court granted the prayer of the petition, and decreed a conveyance of the premises to the complainants with a proviso, that the decree should be void if Shaw paid complainants one hundred dollars within twenty days.

To this decree several objections are urged, to which we will briefly advert.

1. It is urged that complainants are not entitled to a specific performance, because Dutton had not performed his part of the agreement. But we think this objection is not maintained by the facts as they appear in the bill, answer and depositions. They disclose no serious default on the part of Dutton. He appears to have acted in good faith, and to have taken all necessary steps towards a substantial compliance with the terms of the agreement. He appears to have built a house and the fence upon the lot as stipulated; to have tendered the money and demanded a deed, and to have resided upon the premises as a carpenter and joiner for nearly two years before he sold his interest to Livermore, and it is not pretended that these things were not done within a reasonable time. At least the important conditions, which would entitle him to a deed from Shaw, appear to have been performed with ordinary diligence. If the facts in this case, had indicated gross laches, or inexcusable negligence in performing the conditions of the contract on the part of the complainant, or if, after the inception of the agreement, and the refusal of the respondent to execute the deed, those facts had shown a material charge affecting the rights and obligations of the parties, the broad, equitable and just rules of chancery jurisprudence would be violated by enforcing a

specific performance of the contract. But on the other hand, this court will extend relief to the party who seeks it, even if there has not been a strict legal compliance with the terms of the contract, where such non-compliance does not affect the essence of the agreement, does no violence to the manifest intention of the parties, nor shows gross negligence in the complainant. 2 Story's Eq. Jr. §§ 771, 776, 777; *Taylor* v. *Longworth,* 14 Peters, 172, 175.

2. The next objection urged is, that the object of the agreement was lost to the respondent by the complainant's abandonment of the premises. If they had been abandoned by complainant, before he had sufficiently performed the conditions of the contract, to entitle him to a deed from respondent, this objection would have been tenable. But as we understand the case from the evidence before us, the leading conditions upon which Shaw agreed to convey the lot to Dutton were, 1. the erection of the division fence; 2. of a house on the lot; 3. the payment of one dollar and twenty five cents; and 4. as an incident to those leading conditions, Shaw appears to have attached much importance to Dutton's living upon the premises, as a mechanic, for the convenience and benefit of the town of Springfield. But, in relation to this fourth stipulation so much relied upon by respondent, the case does not show any definite agreement between the parties. We cannot, therefore, regard it as an essential element of the contract. Besides if it should be deemed essential, it cannot amount to a valid objection to a specific performance, because there was no portion of time designated for the occupancy of those premises by Dutton as a mechanic, before he should receive a deed for them; and in giving a construction to this doubtful branch of the contract, we think it reasonable to assume that as Dutton had occupied the premises, nearly two years before selling his interest in the property and delivering his possession to Livermore, and as he had mainly performed the more important conditions of the purchase from Shaw, he brought himself within the vale of equitable relief. We can observe

Shaw v. Livermore.

nothing in the transaction, to support the position that as a condition precedent to complainant's right to a deed, he should have continued in actual possession of the lot, and in his mechanical occupation, during a still longer probationary term.

3. It is proposed that unless complainant has made out a clear and conscientious case, a court of chancery should in the exercise of a sound discretionary power, leave the party to his action at law for damages. It is true in equity that the determination of all cases respecting the recission and specific performance of contracts, is a matter of discretion in the court and not of right in the party; and in the exercise of that discretion upon a sound, reasonable, and unbiased consideration of the peculiar circumstances connected with each case, a court should call in the aid of general rules and principles of equity jurisprudence so far as their application may be apparent. Thus guided in the exercise of that discretionary power, we think the circumstances of this case, together with the certain, fair and just objects of the agreement, show that the decree of the court below is reasonable and proper.

4. But another objection to which it may be well to advert is, that the complainant discharged respondent of his contract. This position is assumed from a portion of the evidence. But as that evidence is not responsive either to the bill or answer, and is not only impertinent but vague and unreliable, we conclude that this objection is also without foundation.

Decree affirmed.

*L. Clark* and *F. A. Chenoweth*, for appellant.

*P. Smith*, for appellee.